UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ADAM K.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

24-CV-570-LJV
DECISION & ORDER

On June 17, 2024, the plaintiff, Adam K. ("Adam"), brought this action under the Social Security Act ("the Act"). Docket Item 1. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2] *Id.* On September 16, 2024, Adam moved for judgment on the pleadings, Docket Item 6; on October 31, 2024, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 10; and on November 14, 2024, Adam replied, Docket Item 11.

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Adam applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). One category of persons eligible for DIB includes any adult with a disability who, based on his quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37–38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court grants Adam's motion in part and denies the Commissioner's cross motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation modified) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citation modified) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I. THE ALJ'S DECISION

On August 30, 2023, the ALJ found that Adam had not been under a disability from June 19, 2020, through the date of the decision. *See* Docket Item 3 at 94–95. The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a). *See id.* at 84–85.

At step one, the ALJ found that Adam had not engaged in substantial gainful activity since June 19, 2020, the alleged onset date. *Id.* at 85. At step two, the ALJ found that Adam suffered from three severe, medically determinable impairments: "neurocognitive disorder, alcohol use disorder, [and] status post cerebrovascular accident." *Id.*

At step three, the ALJ found that Adam's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 86–88. More specifically, the ALJ found that Adam's physical impairments did not meet or medically equal listing 11.04 (vascular insult to the brain). *Id.* at 86. Likewise, the ALJ found that Adam's mental impairments did not meet or medically equal listing 12.02 (neurocognitive disorders). *Id.* at 87. In

assessing Adam's mental impairments, the ALJ found that Adam was mildly limited in interacting with others and adapting or managing himself and moderately limited in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace. *Id.* at 87–88.

The ALJ then found that Adam had the residual functional capacity ("RFC")[4] to "perform a full range of work at all exertional levels" except that:

> [Adam] can never climb ladders, ropes, or scaffolds. He can have no exposure to unprotected heights, dangerous moving machinery, or sharp objects. He can perform simple tasks.

*Id.* at 88.

At step four, the ALJ found that Adam no longer could perform any past relevant work. *Id.* at 93–94. But given Adam's age, education, and RFC, the ALJ applied the Medical-Vocational Guidelines ("the Grids")[5] and determined that Adam could perform jobs that exist in significant numbers in the national economy. *Id.* at 94. The ALJ therefore found that Adam had not been under a disability from the alleged onset date through the date of the decision. *See id.*; *see also id.* at 85.

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

[5] The Grids are a series of specific parameters—including a claimant's age, work experience, and exertional capacity—that "direct[] a conclusion as to whether [the claimant] is or is not disabled." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a); *see also Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) ("[T]he [G]rids indicate whether the claimant can engage in any substantial gainful work existing in the national economy.").

## II. ALLEGATIONS

Adam raises one argument: that the ALJ's decision was not supported by substantial evidence. *See* Docket Item 6-1 at 9–12. More specifically, Adam argues that the ALJ improperly relied on the Grids to support her step-five finding. *Id.* This Court agrees that the ALJ erred and, because that error was to Adam's prejudice, remands the matter to the Commissioner.

## III. ANALYSIS

At step five, the Commissioner considers a claimant's age, education, work experience, and RFC "to see [whether the claimant] can make an adjustment to other work." 20 C.F.R. § 416.920(a)(4)(v). In doing so, the Commissioner bears the burden of showing that, given those factors, there are a significant number of jobs in the national economy that the claimant can perform. *See id.* To make that showing, an ALJ may either "apply[] the [Grids]" or "adduc[e] the testimony of a vocational expert." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014).

But an ALJ may not rely on the Grids in all circumstances. Indeed, "sole reliance on the [Grids] may be precluded where [a] claimant's exertional impairments are compounded by significant non[-]exertional impairments," *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (citation modified)—that is, impairments that affect a claimant's "ability to meet the demands of jobs other than the strength demands," 20 C.F.R. § 404.1569a(c). Stated another way, if a claimant has a non-exertional limitation that causes "any more than a 'negligible' impact on [the] claimant's ability to perform the full range of work," the ALJ cannot rely solely on the Grids and must instead seek the testimony of a vocational expert. *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013)

(citing *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010)). And a non-exertional limitation is more than negligible "when it . . . so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Zabala*, 595 F.3d at 411 (citation modified).

Whether an ALJ may rely on the Grids is a "case-by-case" determination. *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986). "[T]he mere existence of a non[-]exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the [Grids]." *Id.* at 603. In fact, an ALJ may apply the Grids even when a claimant has a non-exertional impairment as long as the Grids "adequately reflect [the] claimant's condition." *Id.* at 605.

Here, the ALJ found that Adam had several non-exertional limitations: (1) no climbing ladders, ropes, or scaffolds; (2) no exposure to unprotected heights, dangerous moving machinery, or sharp objects; and (3) performing only simple tasks. Docket Item 3 at 88. The ALJ then concluded that because "these limitations ha[d] little or no effect on the occupational base of unskilled work at all exertional levels, . . . [a] finding of 'not disabled' [wa]s . . . appropriate under . . . section 204.00 [of] the [Grids]." *Id.* at 94.

Adam argues that the ALJ's conclusion was not supported by substantial evidence because the ALJ failed to "explain [her] finding that [Adam's] non[-]exertional limitations had only a negligible impact on the full range of unskilled work." Docket Item 6-1 at 11. This Court agrees.

To start, the Commissioner persuasively argues that none of Adam's non-exertional limitations, considered singly, would "so narrow [Adam's] possible range of work so as to deprive [him] of a meaningful employment opportunity." Docket Item 10-1

at 11 (quoting *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009)). Indeed, the Social Security Administration's own guidance provides that "[w]here a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work." SSR 85-15, 1985 WL 56867, at *6 (Jan. 1, 1985). Likewise, the need for an individual to avoid "recognized hazards such as unprotected elevations and dangerous moving machinery . . . does not [generally] have a significant impact on work that exists at all exertional levels." *Id.* at *8. And where a person has only mental limitations, unskilled jobs at all levels of exertion "ordinarily involve dealing primarily with objects, rather than data or people, and . . . generally provide substantial vocational opportunity." *Id.* at *4.

But Adam did not have only one of these limitations. On the contrary, and as noted above, the ALJ found that Adam had all three. *See* Docket Item 3 at 88. And the combination of these limitations may well have "more than a 'negligible' impact on . . . [Adam's] ability to perform the full range of work." *Selia*, 708 F.3d at 421 (quoting *Zabala*, 595 F.3d at 411). Accordingly, the ALJ was required either to elicit the testimony of a vocational expert or to explain why such testimony was not required. *See Bapp*, 802 F.2d at 606.

As the Commissioner observes, the ALJ concluded that Adam's "non[-]exertional limitations had 'little or no effect' on the occupational base of unskilled work." Docket Item 10-1 at 11 (citing Docket Item 3 at 88–94). But contrary to the Commissioner's assertion, that conclusion—without explanation—was not enough. And other than noting that "safety precautions may significant[ly] limit medium and heavy exertional work," the ALJ did not explain how, if at all, Adam's limitations would affect the jobs

available to him, nor did the ALJ explain why vocational expert testimony was not required. *See* Docket Item 3 at 94.

In an effort to suggest otherwise, the Commissioner argues that the ALJ's assessment of Adam's mental limitations at steps two and three was sufficient. *See* Docket Item 10-1 at 9–10. But that analysis addressed only whether Adam's limitations were severe, not the impact they might have on the occupational base of unskilled work. *See Chaparro v. Colvin*, 156 F. Supp. 3d 517, 538 (S.D.N.Y. 2016) ("ALJ Edgell had already determined that Chaparro had non[-]exertional limitations. . . . At step five, however, ALJ Edgell did not further explain her conclusion that these 'additional limitations' had 'little or no effect' on the range of work open to Chaparro."). In other words, while the ALJ may have considered Adam's non-exertional impairments, the ALJ did not address how those impairments—both singly and in combination—would impact the work available to him.

Indeed, courts in this Circuit repeatedly have remanded cases when the ALJ failed to provide such an explanation in light of the claimant's non-exertional impairments. *See Julie M. v. Comm'r of Soc. Sec.*, 2024 WL 664413, at *15 (N.D.N.Y. Feb. 16, 2024) ("[T]he ALJ's failure to sufficiently elaborate or explain her conclusion that [the] plaintiff's non-exertional impairments were not significant enough to warrant vocational testimony constitutes reversible error."); *Holly S. v. Comm'r of Soc. Sec.*, 2022 WL 580446, at *6–7 (N.D.N.Y. Feb. 25, 2022) ("If the ALJ determines that a vocational expert is not required at step five, the reasoning for that determination must be set forth in sufficient detail."); *Henriquez v. Chater*, 1996 WL 103828, at *4 (S.D.N.Y. Mar. 11, 1996) (Sotomayor, J.) ("[The record] does not . . . indicate whether the ALJ

considered the relevance of expert vocational testimony and concluded that none was needed, or whether he simply skipped this step."). The ALJ's error here compels the same outcome.

And that error is particularly troubling in light of opinion evidence suggesting that Adam's ability to work may well be significantly limited by his non-exertional impairments. For example, Susan Santarpia, Ph.D., found that Adam had mild-to-moderate limitations in understanding, remembering, and applying complex instructions; using reason and judgment to make work-related decisions; sustaining concentration and performing at a consistent pace; and sustaining an ordinary routine and regular work attendance. *See* Docket Item 4 at 320. She then explicitly concluded that Adam's impairments "may significantly interfere with [his] ability to function on a daily basis." *Id.* Those findings certainly suggest that Adam's non-exertional limitations were more than negligible, and it therefore was incumbent on the ALJ to explain why they were not. *See Bapp*, 802 F.2d at 606.

In sum, the ALJ erred at step five by relying on the Grids without explaining how Adam's multiple non-exertional limitations would "have little or no effect on the occupational base of unskilled work at all exertional levels." Docket Item 3 at 94. On remand, the ALJ should "seek the opinion of a vocational expert, or alternatively, explain why the Grid[s] can be treated as dispositive under these circumstances. *Julie M.*, 2024 WL 664413, at *15 (citation modified).

## CONCLUSION

The Commissioner's motion for judgment on the pleadings, Docket Item 10, is DENIED, and Adam's motion for judgment on the pleadings, Docket Item 6, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: August 24, 2026
Buffalo, New York

***/s/ Lawrence J. Vilardo***
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE